# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MACIEL BUILDERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>US FRAMING INTERNATIONAL LLC, et al.,<br><br>Defendants. | Case No. 19-cv-03660-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE COMPLAINT**<br><br>[Re: ECF 13, 42, 57, 58] |

This is a dispute over work performed by Plaintiff Maciel Builders, LLC ("Maciel") for a construction project known as Ohlone Block B in San Jose, California. Maciel was apparently engaged by Defendants—US Framing International, LLC and affiliated entities and individuals—to perform carpentry work for the project, but the relationship quickly soured. Maciel now sues Defendants to recover money allegedly owed to it, bringing various state law claims, a request for declaratory judgment, and a civil RICO claim. Defendants move to dismiss the entire suit as barred by California Business and Professions Code § 7031. As set out below, the Court agrees that § 7031 bars the state law claims but not the federal law claims. The motion to dismiss is therefore GRANTED IN PART WITHOUT LEAVE TO AMEND and DENIED IN PART.

## I. BACKGROUND

On June 24, 2019, Maciel filed the instant suit, alleging the following facts. ECF 1 ("Compl."). The Court accepts these allegations as true for purposes of this motion to dismiss. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)

Ohlone Block B is a construction project owned by Green Public LLP, located at 355 Sunol Street, San Jose, California. Compl. ¶ 24. At some point prior to July 2018, US Framing International, LLC ("Framing International"), in its capacity as the framing contractor for Ohlone

1 Block B, engaged Maciel in discussions about the possibility of hiring Maciel to provide carpentry

2 services for Ohlone Block B. *Id.* ¶¶ 25, 30. During those discussions, Maciel says, Maciel "made

3 it very clear" to Framing International and Ryan Therrien—a Vice President at Framing

4 International, *id.* ¶ 5—"on at least five (5) different occasions that it was neither bonded nor

5 licensed as a subcontractor." *Id.* ¶ 29. Framing International was apparently under some time

6 pressure to secure Maciel's services, and so made various promises to Maciel in order "to induce

7 the Plaintiff to come onto work on the project very promptly." *Id.* ¶ 30. Specifically, Framing

8 International and Therrien promised (i) to "provide many other assignments to the Plaintiff for

9 rough carpentry work," in addition to Ohlone Block B, (ii) to make timely payments to Plaintiff

10 for all its work, and (iii) to pay Maciel a "substantial bonus" (collectively, "Promises"). *Id.*

11 Maciel agreed to join the project, at which point Framing International, Therrien, and Matthew

12 Phillips—another Vice President at Framing International—sent Maciel a written agreement titled

13 Independent Sub-Subcontractor Agreement (the "Agreement"), a copy of which is attached to the

14 Complaint as Exhibit A. *Id.* ¶ 31; *see* ECF 1-1 ("Ex. A"). According to Maciel, however, only

15 Maciel ultimately signed the Agreement; Framing International did not. Compl. ¶¶ 31-32.

16 In July 2018, Maciel sent its tools and crew of laborers from Mesa, Arizona—its principal

17 place of business, Compl. ¶ 1—to San Jose to begin work on Ohlone Block B. *Id.* ¶ 32. Maciel's

18 work apparently did not go smoothly. First, Maciel says that Framing International had failed to

19 engage a hardware provider, and that Therrien therefore asked Maciel "to perform the functions of

20 a hardware provider using materials provided by Defendants." Compl. ¶ 35. In addition, the

21 "prefabricated panels and trusses ordered by or on behalf of Framing International" arrived on the

22 jobsite in incorrect sizes and hence required "substantial modifications." Compl. ¶ 37. Framing

23 International, Therrien, and Ivan Villalva—the foreman for Framing International—allegedly

24 demanded that Maciel make the modifications, which "substantially delayed the Plaintiff from

25 performing the rough carpentry work" it had originally been hired to perform. *Id.*

26 Maciel sought payment for these additional services by submitting change orders to

27 Framing International totaling $102,540 as of November 2018. Compl. ¶¶ 35, 37-39. Framing

28 International, however, apparently blamed Maciel for delaying the project and refused to pay the

change orders. *Id.* ¶ 39. Framing International instead demanded that Maciel cure the delays. *Id.* ¶¶ 40, 43. Maciel says that the delays resulted from its having to perform the additional work of a hardware provider and modify the panels and trusses, as well as from other acts of mismanagement on the part of Framing International. *Id.* ¶ 39.

Maciel alleges that Framing International also began withholding certain amounts from its regular bi-monthly payments for "premiums related to bogus insurance policies." Compl. ¶¶ 40-41. When Maciel asked for an explanation, Framing International did not provide any. *Id.*

Ultimately, the working relationship became untenable and Maciel left the Ohlone Block B project. Compl. ¶ 47. Maciel was never paid for the change orders, nor did Maciel receive the bonus it had been promised. *Id.* ¶ 50.

To recover the money it believes it is owed, Maciel brings the instant suit against the following five Defendants: Framing International; its wholly-owned subsidiary, US Framing West, Inc. ("Framing West"); Thomas English, the Managing Member of Framing International and President of Framing West; Nicholas Rivera, a Manager of Framing International and Framing West; and Ivan Villalva, a Foreman for Framing International and Framing West. Compl. ¶¶ 2-9; *see* ECF 59 (dismissing three unserved defendants from the case). The Complaint contains twelve counts: (1) a claim for declaratory judgment that the parties have no rights or duties under the Agreement ("Count 1"); (2) a claim for breach of contract, if the Court rules to the contrary on Count 1 ("Count 2"); (3) a claim for breach of implied covenant of good faith and fair dealing, if the Court rules to the contrary on Count 1 ("Count 3"); (4) a claim for promissory estoppel, if the Court rules to the contrary on Count 1 ("Count 4"); (5) a claim for intentional misrepresentation, if the Court rules to the contrary on Count 1 ("Count 5"); (6) a claim for promise without intention to perform, if the Court rules to the contrary on Count 1 ("Count 6"); (7) a claim for interference with prospective economic advantage ("Count 7"); (8) a conversion claim ("Count 8"); (9) a claim for money due on an open book account ("Count 9"); (10) a claim for money due on an account stated in writing ("Count 10"); (11) a claim for quantum meruit ("Count 11"); and (12) a civil RICO claim under 18 U.S.C. § 1962. Compl. ¶¶ 58-147.

On August 12, 2019, Defendants Framing International, Framing West, and English moved

1  to dismiss the Complaint in its entirety. ECF 13. The motion is now fully briefed and ripe for the
2  Court's decision.

## II. JOINDER BY DEFENDANTS RIVERA AND VILLALVA

Defendants Rivera and Villalva move to join the Motion to Dismiss. ECF 42. Plaintiff opposes joinder on the ground that the Motion to Dismiss has been fully briefed by both sides since September 10, 2019, and that allowing briefing by Rivera and Villalva would be prejudicial to Plaintiff. ECF 45. As Rivera and Villalva make clear, however, they are not seeking permission to file supplemental briefing; they are simply joining in the arguments already made in the Motion to Dismiss and Reply. ECF 48. As a result, the Court sees no prejudice to Plaintiff; moreover, judicial economy will be served by allowing joinder. The Motion for Joinder is therefore GRANTED.

## III. REQUESTS FOR JUDICIAL NOTICE

On January 30, 2020, Plaintiff filed two requests for judicial notice, which Plaintiff believes are relevant to the Motion to Dismiss. ECF 57, 58; *see* ECF 56 at 4-5 (The parties' Joint Case Management Statement). The Court summarily STRIKES Plaintiff's requests as untimely because they were filed well after the October 29, 2019 deadline for Plaintiff's Opposition to the Motion to Dismiss. In any event, neither of the documents of which the Plaintiff asks the Court to take judicial notice affects the Court's resolution of the instant motion.

## IV. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

In ruling on a Rule 12(b)(6) motion, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

*Manzarek*, 519 F.3d at 1031. A complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Generally, a motion to dismiss under Rule 12(b)(6) must rely solely on the contents of the pleadings. *See* Fed. R. Civ. P. 12(d). A court may, however, consider "matters of judicial notice" without converting a motion to dismiss into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Furthermore, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

## V. DISCUSSION

Defendants' motion to dismiss contends that Maciel's suit is barred by California Business and Professions Code § 7031. That statute is part of California's Contractors' State License Law ("CSLL"), *id.* at §§ 7000 et seq., which is "a comprehensive legislative scheme governing the construction business in California." *Pac. Caisson & Shoring, Inc. v. Bernards Bros. Inc.*, 198 Cal. App. 4th 681, 687 (2011). Its purpose is "to protect the public from incompetence and dishonesty in those who provide building and construction services" by imposing licensing requirements upon such persons and entities. *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 995. To enforce those licensing requirements, § 7031 provides, with exceptions not relevant here, that

> [N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought

5

by the person . . . .

Cal. Bus. & Prof. Code § 7031(a). According to the California Supreme Court, § 7031 codifies the California "Legislature's obvious intent to impose a stiff all-or-nothing penalty for unlicensed work by specifying that a contractor is barred from all recovery for such an 'act or contract' if unlicensed at any time while performing it." *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal. 4th 412, 426 (2005); *see also Hydrotech*, 52 Cal. 3d at 995 (Section 7031 "withhold[s] judicial aid from those who seek compensation for unlicensed contract work."). So strong is the policy animating § 7031 that the prohibition "operates even where the person for whom the work was performed knew the contractor was unlicensed." *Hydrotech*, 52 Cal. 3d at 997.

Maciel does not dispute that, as a federal court sitting in diversity, this Court is bound to apply the CSLL to its state law claims.[1] Nor does Maciel allege or argue that it was licensed as a contractor during the relevant time period; indeed, the Complaint says Maciel disclosed its lack of a license to the Defendants, Compl. ¶ 29. Maciel does, however, challenge the applicability of § 7031 to the instant case on two grounds: (1) Maciel believes it is not a "contractor" required to be licensed under § 7031, and (2) even if § 7031 bars some of its claims, it does not cover Maciel's tort claims. *See* ECF 21 ("Opp.") at 11-14. The Court addresses—and ultimately rejects—both arguments below.

### A. Plaintiff was a "Contractor" under California Business and Professions Code § 7031

By its terms, § 7031 covers only persons "engaged in the business or acting in the capacity of a contractor." Cal. Bus. & Prof. Code § 7031(a). California Business and Professions Code § 7026 defines "contractor" for the purposes of § 7031. *Hydrotech*, 52 Cal. 3d at 995. It states:

> "Contractor" . . . is synonymous with "builder" and . . . is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the

---

[1] Maciel does not argue, for instance, that a different state's substantive laws apply to its state law claims.

6

> erection of scaffolding or other structures or works in connection therewith, . . . and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise.

*Id.* at § 7026. It further specifies that "contractor" "includes subcontractor and specialty contractor." *Id.*

Maciel does not dispute that, in performing carpentry services for the Ohlone Block B construction project, Maciel falls within this definition. After all, the Complaint is replete with allegations regarding the work Maciel carried out on the project. Nonetheless, Maciel maintains that it is not a "contractor" by virtue of California Labor Code § 2750.5. Opp. at 13-14. That provision states:

> There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to [the CSLL], or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor.

Cal. Lab. Code § 2750.5. In other words, an unlicensed worker performing work for which a contracting license is required under the CSLL is presumed to be an employee rather than independent contractor. *Accord Hurst v. Buczek Enterprises, LLC*, 870 F. Supp. 2d 810, 816 (N.D. Cal. 2012).

However, § 2750.5 is not part of the CSLL; it is part of the Labor Code, in the Employment Relations division. It, along with the more general provision at § 2750.3, classifies employees and independent contractors for employment law purposes, *e.g.*, worker's compensation, pensions plans, wage orders, etc. *See* Cal. Lab. Code §§ 2750.3(a)(1), (f); *accord id.* § 2750.5 itself does not purport to affect the definition of a contractor under the CSLL; on the contrary, it treats—and incorporates by reference—the CSLL as a separate statutory scheme. In other words, § 2750.5 distinguishes between employees and independent contractors—not between persons who are and are not engaged in the contractor business. Moreover, as the California Court of Appeal has pointed out:

> [I]f section 2750.5 were applied to determinations under sections 7031 and 7053, every unlicensed person performing work on a job would be characterized as an employee and not an independent contractor. This result would repeal by implication section 7031's ban on recovery by an unlicensed contractor.

7

*Fillmore v. Irvine*, 146 Cal. App. 3d 649, 657 (Ct. App. 1983). In order to avoid that result, and in recognition of the two provisions' distinct statutory purposes, the Court of Appeal held that "Labor Code section 2750.5 is not applicable to determinations of whether one is an . . . unlicensed contractor under Business and Professions Code sections 7031 and 7053." *Id.*; *see also Hurst*, 870 F. Supp. 2d at 816-17 (following *Fillmore*). Maciel's appeal to § 2750.5 is therefore unavailing.

Maciel also suggests that it is not a contractor because the Agreement was never signed, and thus Maciel was never formally obligated to work on Ohlone Block B. *See* Opp. at 3-4, 12. This argument is easily disposed of, for § 7026 specifies that performing contracting activities—which again, Maciel concedes it has done—is enough to make Maciel a contractor under § 7031. Moreover, § 7031 itself covers both "acts" and "contracts." Consequently, as the California Supreme Court has held, "one may not avoid the all-or-nothing bar against recovery for unlicensed services simply because there is no formal contract." *MW Erectors, Inc.*, 36 Cal. 4th at 428.

Accordingly, the Court finds that, based only upon the allegations in the Complaint, Maciel was a contractor under § 7031.

### B. California Business and Professions Code § 7031 Precludes All Plaintiff's State Law Claims

Having found that § 7031 applies to Maciel and to the work it carried out on the Ohlone Block B project, and it being conceded that Maciel was not licensed, the Court holds that Maciel is prohibited from suing "for the collection of compensation for the performance" of its work on Ohlone Block B. Maciel's second challenge concerns the scope of this prohibition. Specifically, Maciel argues that its tort claims for "promissory estoppel, intentional misrepresentation and deceit, promise made without intention to perform, interference with prospective economic advantage, conversion, and civil RICO" fall outside § 7031. Opp. at 13. These claims allege that Defendants made various Promises—including promises of timely payment and a bonus—upon which Maciel reasonably relied in agreeing to join the project, but that Defendants never intended to fulfill those Promises. *See* Compl. ¶¶ 79-117. The conversion claim further alleges that Defendants actually secured payment from the general contractor for Plaintiff's change orders and

for the amounts withheld for "bogus" insurance premiums, but then kept the money instead of remitting it to Plaintiff. *Id.* ¶ 122-23.

Maciel's argument, however, is precluded both by the plain text of the statute and by California case law. Section 7031 makes clear that it covers "any action" "in law or equity," Cal. Bus. & Prof. Code § 7031(a), thereby "eliminat[ing]" both "contractual and quasi-contractual claims seeking 'compensation' for unlicensed work." *Hydrotech*, 52 Cal. 3d at 997. Put another way, "section 7031 bars all actions, however they are characterized, which effectively seek 'compensation' for illegal unlicensed contract work." *Id.* Thus, in *Hydrotech*, the California Supreme Court disallowed Hydrotech's tort claim, which alleged "it was induced to enter and perform an illegal contract by a false promise to pay; that it would not have performed had it known the promise was false when made; and that it therefore suffered damage." *Id.* at 998. As the Court explained, "an unlicensed contractor may not circumvent the clear provisions and purposes of section 7031 simply by alleging that when the illegal contract was made, the other party had no intention of performing." *Id.* "However artful the pleadings, if the primary fraud alleged is a false promise to pay for unlicensed construction work, and the primary relief sought is compensation for the work, section 7031 bars the action." *Id.* at 1002.

*Hydrotech* governs this case precisely. Although the Complaint alleges ten separate causes of action under state law—some of which sound in tort—the aim of them all is to obtain compensation for the work Maciel performed on Ohlone Block. Regardless of the legal hook, the compensatory damages sought are $141,932.91—which appears to be the present value of the change orders—"plus the amount of the wholly improper deduction of the Bogus Insurance Premiums with the exact amount to be determined according to proof." Compl. at 37-42. It is thus clear that all ten state law claims "effectively seek" compensation for unlicensed work and not for tortious conduct "external to the arrangement for construction work as such." *Hydrotech*, 52 Cal. 3d at 997, 1001. As a result, they are barred by § 7031. That is so even though Maciel believes it was wrongfully induced to perform the work in the first place. "The point . . . is that the deterrent and protective purposes of section 7031 preclude recovery even when the person who solicited the unlicensed work *did* act in bad faith." *Id.* at 999. The Court must, therefore,

9

1    DISMISS Counts 2 through 11 of the Complaint.

2    Unaffected by § 7031, however, are Maciel's two federal law claims: the request for declaratory judgment under 28 U.S.C. § 2201 (Count 1) and the barebones civil RICO claim under 18 U.S.C. § 1962 (Count 2). Because § 7031 is the only ground upon which Defendants have moved to dismiss the Complaint, the Court DENIES the motion as to Counts 1 and 12.

Although Defendants have not challenged Count 12 for failure to plead the elements of a RICO claim, the Court notes that Maciel alleges a single victim RICO scheme beginning around July 2018 and ending around February 2019. *See* Compl. ¶¶ 32, 42, 45. This type of closed-ended scheme will require proof of "a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). "The Ninth Circuit has explained that activity spanning only a matter of months, involving a single victim, with a singular goal, cannot sustain a RICO claim." *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019) (citing, *inter alia*, *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) and *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987)).

### C. Leave to Amend

Having dismissed all of Maciel's state law claims, the Court must now decide whether to grant leave to amend. In determining whether leave to amend is warranted, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, it is clear that "leave to amend need not be granted when any amendment would be an exercise in futility." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018).

Here, the Court dismissed Maciel's state law claims pursuant to a statutory bar. Because

10

Maciel cannot avoid this statutory bar with amendment, leave to amend would be futile. Accordingly, the dismissal of Counts 2 through 11 is without leave to amend.

## VI. ORDER

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED as to Counts 2 through 11 WITHOUT LEAVE TO AMEND. The motion is DENIED as to Counts 1 and 12.

**IT IS SO ORDERED.**

Dated: February 14, 2020

BETH LABSON FREEMAN
United States District Judge